## WILSON EMPLOYEES' REPRESENTATION PLAN v. WILSON & CO.

### Civil Action No. 3083-H.

District Court, S. D. California, Central Division.

Nov. 24, 1943.

S. Arion Lewis, Jr., of Los Angeles, Cal., for plaintiff.

Betts & Garrison, by Forrest A. Betts, all of Los Angeles, Cal., for defendant.

Katz & Gitelson, by Chas. J. Katz, all of Los Angeles, Cal., for intervenor.

HOLLZER, District Judge.

The matters requiring determination arise out of certain motions interposed on behalf of United Packing House Workers of America (P. W. O. C. Local 200), an unincorporated Labor Union affiliated with

the Congress of Industrial Organizations, hereinafter referred to as intervenor. Such motions are:

1. To vacate the injunction pendente lite heretofore granted herein.

2. To dismiss the suit.

The complaint alleges, in substance, that this action arises under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., hereinafter called the Act; that plaintiff is an independent labor organization formed in 1936, whose membership is composed of the production and maintenance employees of defendant, excluding teamsters, truck drivers, office employees and certain others; that ever since 1936 and down to the time of the commencement of this action, plaintiff has been the sole bargaining agency for all such employees; that throughout said period it has been the practice of plaintiff annually to hold certain elections at which all of such employees have been eligible to vote, and thereby a certain group known as Employees' Representative Committee has been chosen to act as said employees' representative for purposes of collective bargaining with defendant and also to manage plaintiff's affairs; that throughout said period it has been the practice of plaintiff, annually, immediately following the election of the Committee, to enter into a contract through the Committee with defendant, whereby the latter has agreed to recognize the former as the sole bargaining agency for all such employees at defendant's Los Angeles plant for all purposes concerning wages, rates of pay, hours of employment and all other matters relating to labor relations between defendant and such employees; that through the Committee elected May 10, 1943, plaintiff and defendant on or about May 21, 1943 entered into a contract of the kind specified, the same to remain in effect until the second Monday of May, 1944.

It is further alleged that although plaintiff at all times has been and is ready, willing and able to perform all of its obligations thereunder, defendant has refused and threatens to continue to refuse to perform any part of said contract; that the defendant seeks to justify such refusal on the ground that it has been ordered by a certain decision and certification issued on July 13, 1943, by the National Labor Relations Board, hereinafter referred to as the Board, to recognize for the purposes of collective bargaining said intervenor; but that said decision and certification are void.

Likewise the complaint avers that by reason of a petition filed by intervenor claiming to be the representative of a majority of such employees, the Board caused several elections to be held among said employees; that in the last of such elections, to-wit the one held June 24, 1943, there were 436 eligible voters, 382 of whom cast their ballots, that 11 of the latter were challenged, and that of the remainder 192 were cast for intervenor and the balance for plaintiff; that said election was improperly, unfairly and unlawfully held, supervised and managed by the Board for the following reasons, namely, bias and prejudice against plaintiff and in favor of intervenor were exhibited before and throughout said election by the Board's Field Examiner who conducted said proceedings, that the place of election was generally reputed to be the premises dominated by intervenor and was selected over plaintiff's objection, that said Field Examiner demanded that defendant refuse to deal with plaintiff, that he improperly exercised challenges to 11 votes, that in violation of directives issued by the Board said Field Examiner changed the appropriate employment unit by excluding therefrom plant clerical employees who are paid on an hourly basis, and that no such organization as the aforementioned C. I. O. Union exists.

In addition plaintiff has pleaded that it has exhausted every remedy it had before the Board, that it filed with the Board its objections to said election held June 24, 1943, and requested a hearing thereon, but the Board denied plaintiff a hearing on said objections, overruled the same, and issued the aforementioned certification that the intervenor be recognized as the representative for the purposes of collective bargaining of said employees of defendant.

It is further alleged in the complaint that defendant's repudiation of its contract with plaintiff has resulted and will continue to result in irreparable loss to the latter in various respects, as more particularly set forth in said pleading, unless defendant be enjoined from continuing its repudiation of said agreement; and that the Act makes no provision for judicial appeal or review of proceedings of said Board had pursuant to Section 9 of the National Labor Relations Act. The complaint prays that defendant be enjoined from continuing its repudia-

tion of said contract, including its refusal to recognize the aforementioned Committee as the sole bargaining agent of said employees of defendant respecting all matters concerning wages, hours of employment and all other matters pertaining to labor relations between defendant and its said employees.

Defendant filed an answer and alleged therein in substance that this action arises not under the Act, but that if plaintiff has a cause of action it is one arising in equity because of the failure of the Act to provide for court action arising out of a ruling of the Board in the certification of a collective bargaining unit; also that until the Board made its determination holding the C. I. O. to be the collective bargaining agent, defendant recognized plaintiff and its committee; that by reason of such certification by the Board and ever since about July 19, 1943, defendant has refused to carry out the terms of the aforementioned contract entered into between it and plaintiff, and instead has recognized said C. I. O. Committee as such bargaining agent of its employees hereinbefore mentioned.

Save in the specific instances presently to be noted, the material allegations of the complaint are not denied in the answer. After averring that neither the plaintiff nor the intervenor received a majority vote of its employees entitled to vote in the employment unit appropriate for such purposes and required by Section 9 (a) of the Act, and after charging upon information and belief that the Field Examiner for the Board showed favoritism toward the C. I. O. Union in his supervision and management of the election, defendant has denied, for lack of information or belief sufficient to enable it to answer the same, those allegations of the complaint wherein plaintiff has alleged in substance that the place of election was improper, that 11 employees were wrongfully challenged, that the Field Examiner wrongfully changed the appropriate employment unit, and that the aforementioned C. I. O. Union had no existence.

In its answer defendant has also pleaded that it filed objections to the election held on June 24, 1943, and requested the Board to fix a time for hearing these objections, but that the Board denied such request and made the certification previously mentioned. In addition defendant has alleged that if the action of the Board be void and not binding upon defendant and if plaintiff was entitled to a continuance of compliance with its collective bargaining contract, then defendant admits plaintiff would be seriously affected by defendant's refusal to deal with plaintiff and that the latter's rights may be preserved only by an injunction restraining defendant from repudiating its contract with plaintiff and from continuing its refusal to recognize plaintiff's committee as the sole bargaining agent of defendant's employees previously described.

At the hearing held upon plaintiff's application for an injunction pendente lite counsel for plaintiff and defendant, respectively, appeared, and thereupon such application was presented upon a record whereby they stipulated in open court to a set of facts which in substance established the truth of the ultimate facts pleaded in the complaint. Upon that record an order was made awarding to plaintiff an injunction pendente lite substantially as prayed for.

Approximately three days later intervenor filed a motion for leave to intervene and also a motion to vacate the injunction pendente lite, and subsequently moved to dismiss the action. In support of the first two motions intervenor has submitted copies, respectively, of the Board's original Decision and Direction of Elections, its Supplemental Decision and Certification of Representatives and Direction of Run-Off Election, its Second Supplemental Decision and Direction of Second Run-Off Election and also the Board's Third Supplemental Decision and Certification of Representatives, and in addition intervenor filed two affidavits.

Besides restating certain of the matters disclosed by the complaint, the aforementioned Decisions, etc., of the Board show that plaintiff appeared and participated at the hearing held by the Board on February 15 and 16, 1943, upon the intervenor's petition seeking a determination of representation of defendant's employees; that in the original Decision and Direction of Elections, rendered under date of March 19, 1943, the Board directed that, not later than thirty days thereafter, elections be conducted at defendant's Los Angeles plant, among the appropriate employees who were employed during the pay-roll period immediately preceding the date of said Direction; that on April 14, 1943, the first of such elections was held among the appropriate employees (that is, such employees as were on its payroll at defendant's Los Angeles plant on March 13, 1943); that

thereafter intervenor filed objections to the conduct of the ballot at said first election; that subsequently intervenor withdrew a portion of said objections and that the Board had overruled the remainder; that both plaintiff and intervenor filed requests for a run-off election to be conducted by the Board, and that although plaintiff requested that such election be between intervenor and itself, and although intervenor requested that the employees be allowed to vote for itself, the plaintiff or neither, the Board directed that at such election the employees be allowed to decide whether they desired to be represented by plaintiff or intervenor or another Union referred to as the Amalgamated; that, based upon the results of said last mentioned election, the Board found that the employees described in the complaint constituted a unit appropriate for the purposes of collective bargaining within the meaning of Section 9 (b) of the Act, and also found that since none of the participating labor organizations had received a majority of the ballots cast a run-off election should be held; that no objections to the conduct of such first run-off election or to the report thereon submitted by the Regional Director had been filed by any of the parties; that thereafter and because none of the competing labor organizations received a majority of the votes cast, a second run-off election was ordered to permit the employees to decide whether they desired to be represented by plaintiff or by intervenor for purposes of collective bargaining.

The aforementioned Third Supplemental Decision and Certification of Representatives related to the election last held, namely, on June 24, 1943, and among other matters showed that no determination was made by the Board respecting the challenged ballots because the number thereof could not affect the results of the election, also that plaintiff filed Objections to the Conduct of the Ballot, alleging that (1) the Board's agent in charge exhibited partiality to intervenor, (2) the election place was improper in that such premises were frequented and dominated by intervenor causing a considerable number of eligible voters to refuse to go there, (3) the Board's agent prior to the election demanded that defendant refrain from negotiating with plaintiff thereby causing embarrassment and prejudice to the latter, and (4) the Board's agent improperly and without authority challenged 11 votes, thereby favor-

ing intervenor and prejudicing plaintiff, and he improperly attempted to effect a change in the unit found appropriate by the Board by challenging the votes of plant clerical employees. Said Decision and Certification further showed that the Board had found that said objections raised no material or substantial issues; also that the Board had found that the polling place was the same as that used at the first two elections, that no objection to the use of such polling place had been previously filed, that no evidence had been submitted to support the objection that said premises were frequented or dominated by intervenor or that eligible voters were discouraged from voting for that reason; likewise that the Board had found that its agent acted properly in advising defendant to refrain from negotiating with plaintiff as the exclusive bargaining representative pending the election, since recognition of plaintiff as such representative during that period might constitute favoritism; and that the Board had further found that the objection respecting the challenge of the 11 votes lacked merit, since the Board invested its agents with the duty of challenging votes of persons whose eligibility was in doubt, and finally that, of the 21 employees claimed to have been affected, all but one had voted.

In each of the affidavits filed on behalf of intervenor the affiant is described as an International Representative for the United Packing House Workers of America (Packing-house Workers Organizing Committee, C. I. O.). In the first of said affidavits, after referring to various portions of the aforementioned Decisions etc., affiant asserts that following the second runoff election the President of plaintiff made a written statement reciting in part: "Such balloting was fairly conducted, that all eligible voters were given an opportunity to vote their ballots in secret and that the ballot box was protected in the interests of a fair and secret vote;" also that in another signed statement plaintiff's President admitted he had acted as observer in the counting and tabulating of ballots and "that such accounting and tabulating were fairly and accurately done and that the secrecy of the ballot was maintained;" also that pursuant to a decision rendered on February 8, 1943, the National War Labor Board ordered defendant to enter into a master collective bargaining contract fixing hours, wages and working conditions for defendant's employees at its various

plants outside of California, that said agreement was executed by defendant and affiant's Union and made retroactive to August 20, 1942; also that on September 2, 1943, said National War Labor Board entered a supplementary order directing defendant to extend to its Los Angeles plant the coverage of said master agreement and further directing that any agreement subsequently reached by negotiations concerning matters not covered by the master agreement and having special reference to defendant's Los Angeles plant might be incorporated in a supplement to the master contract; also that the injunction issued herein will jeopardize the rights of the employees of defendant and its Los Angeles plant, and will interfere with the proper carrying out of the terms of said contract in so far as other employees of defendant are concerned; also that on behalf of his Union affiant is carrying on negotiations looking to the settlement of approximately six important grievances between defendant and employees thereof involving wage inequalities, vacations and discharges, and that unless such matters are disposed of promptly, they will fester and impede production and adversely affect the morale of the defendant's employees, to the irreparable injury of the latter, of the C. I. O. and the war effort in general.

Attached to the second affidavit of the same affiant is a photostatic copy of the aforementioned master agreement. Likewise there is set forth in the second affidavit a copy of the previously mentioned supplementary order entered by said National War Labor Board on September 2, 1943. In addition it is averred in the second affidavit that, excepting for the provisions of said master agreement, there exists no contract giving to defendant's production and maintenance workers any collective bargaining coverage or any of the benefits or protections accorded to them by said agreement; also that in reliance upon the injunction pendente lite issued herein defendant has declined to comply with the provisions of said supplementary order of the National War Labor Board and has notified said affiant it would not grant to its employees the benefits and protections from said agreement, because said injunction forbade it dealing with affiant's Union. None of the allegations of these affidavits has been denied.

During the progress of the oral argument upon intervenor's motions, and in response to the Court's request for information upon the subject, two affidavits were filed respecting the number of defendant's employees eligible to vote at the several elections referred to in the complaint. In one of said affidavits, namely, that verified by plaintiff's Chairman, it is asserted that on the first Tuesday of May, 1943 there were 621 of defendant's employees who were eligible to vote in plaintiff's primary election held that day, that at said election 412 of said employees voted; also that on the date of plaintiff's final election, namely on May 10, 1943, there were 609 such employees who were eligible to vote, and of these 407 voted at said election.

In the remaining affidavit, namely, one verified by an employee of the defendant having charge of personnel at its Los Angeles plant, it is averred that on the date of the final election, to-wit, June 24, 1943, there were in defendant's employ 608 workers entitled to be classified as belonging to the unit which the Board had determined to be appropriate for the purposes of collective bargaining and of the election originally ordered by the Board. Attached to the second affidavit are lists of defendant's employees showing as of date, respectively, on March 13, 1943, and on June 5, 1943, those entitled to be classified as belonging to the unit which the Board had determined to be appropriate, and also lists indicating which of said employees had terminated their employment with defendant on or before June 24, 1943, and subsequent to March 13, 1943, from which lists it appears that on June 24, 1943, there were 172 additional employees at defendant's Los Angeles plant, who had entered into its employ subsequent to March 13, 1943, and who otherwise were eligible to vote at the aforementioned final election, except for the fact that the Board had ruled that only such employees would be eligible to vote at any of the elections as were on the pay-roll at defendant's Los Angeles plant on March 13, 1943.

An order having been made granting intervenor leave to intervene, there remain to be determined intervenor's motion to set aside the injunction pendente lite heretofore granted and also intervenor's motion to dismiss.

In support of these motions intervenor contends that the present lawsuit arises out of a controversy which concerns the association or representation of certain of defendant's employees in negotiating, fixing,

or seeking to arrange terms or conditions of employment, and hence that such controversy constitutes a labor dispute within the meaning of both the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq., and of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. It is further argued that the only, or at least the principal, relief which plaintiff seeks is injunctive in character; that the complaint fails to allege that any unlawful act has been threatened and will be committed unless restrained or that any such act has been committed and will be continued unless restrained, also that it does not appear from said pleading that the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection, and in fact that there is not even a suggestion in the complaint of any threatened violence. Accordingly, intervenor insists that the injunction heretofore granted herein is violative of the provisions of the Norris-La Guardia Act, particularly Sections 101 and 107 thereof, and hence that the same has been improvidently and inadvertently issued, also that the court has no jurisdiction over the subject matter of the complaint, and that said pleading does not set forth facts sufficient to constitute a cause of action for equitable relief.

In addition intervenor urges that the complaint and the answer appear to be attempts to attack collaterally and without notice to the Board its certification and decision made on July 19, 1943, and that plaintiff and defendant are attempting through the medium of the present lawsuit to review the acts of the Board. Likewise it is asserted that the effect of the injunction granted herein is to impede and vacate the orders heretofore made by the National War Labor Board directing defendant to bargain with intervenor exclusively with respect to hours, etc.

On the other hand, plaintiff contends that, while the Board has certified intervenor to be the exclusive bargaining agent of the aforementioned employees of defendant, and although under the Act defendant and intervenor each may separately proceed administratively and thereafter by judicial procedure to secure enforcement, modification or the setting aside of such certification, nevertheless, unless and until either of said parties should institute such a proceeding before the Board, and thereafter prosecute a review therefrom before a Circuit Court of Appeals, plaintiff, who is contesting the validity of such certification, may not proceed administratively to obtain relief therefrom.

Again, it is pointed out that said certification, in effect, is a decision which the Board has power to make under the Act and is definitive, adversary, binding and final, and also strikes at the very roots of plaintiff's organization and if not set aside will destroy its effectiveness. Said certification, however, is not an order and hence is not appealable. Likewise, it is argued that, unless defendant should refuse to conform to such certificate, and also unless the Board should order defendant to conform thereto, and thereafter the latter should refuse to obey such order, no ground would exist upon which to prosecute a review from the Board's ruling; and that under said Act only defendant or intervenor, but not plaintiff, would be entitled to initiate such review. Furthermore, it is plaintiff's position that under the present lawsuit it seeks to safeguard the rights granted to it under the terms of the aforementioned contract made with defendant on or about May 21, 1943, by enjoining the latter from violating the same, particularly the right therein granted to plaintiff to represent the above mentioned employees of defendant; also that such controversy exists only between plaintiff and defendant; and hence that the same does not constitute a labor dispute within the meaning of the Norris-La Guardia Act.

Finally, plaintiff urges that to deny to it the injunctive relief here sought and thus to permit defendant to breach the contract entered into between them would leave the former without any remedy and would cause it irreparable injury. Accordingly, plaintiff insists that under well settled principles of equity it is entitled to such injunctive relief.

During the rather extended oral argument, counsel representing the respective parties cited and quoted from a rather considerable number of decisions. We note with satisfaction that counsel were exceedingly industrious and painstaking in their research preparatory to such argument. Counsel for plaintiff and counsel for defendant rely principally upon the following cases: A. F. of L. v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 76, 84 L.Ed. 448; National Labor Relations Board v. International Brotherhood, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354; National Labor Relations Board v. Falk Corp.,

308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396; United Employees Ass'n v. National L. R. Bd., 3 Cir., 96 F.2d 875; Klein v. Herrick, D.C., 41 F.Supp. 417; A. F. of L. v. Madden, D. C., 33 F.Supp. 943, and Oberman & Co. v. United Garment Workers, D. C., 21 F.Supp. 20.

It will be observed that, with the exception of the last mentioned decision, each of the cases above cited was one in which the National Labor Relations Board, or some official thereof, was a party. Indeed, all but the last three were cases in which review proceedings had been prosecuted under the Act before a Circuit Court of Appeals. In A. F. of L. v. National Labor Relations Board, 308 U.S. 401, at pages 404, 405, 60 S.Ct. 300, at page 302, 84 L.Ed. 347, the Supreme Court said:

"The single issue which we are now called on to decide is whether the certification by the Board is an 'order' which, by related provisions of the statute, is made reviewable upon petition to the Court of Appeals for the District or in an appropriate case to a circuit court of appeals. The question is distinct from another much argued at the Bar, whether petitioners are precluded by the provisions of the Wagner Act from maintaining an independent suit in a district court to set aside the Board's action because contrary to the statute, and because it inflicts on petitioners an actionable injury otherwise irreparable." Again, at page 412, of 308 U. S., at page 305 of 60 S.Ct., 84 L.Ed. 347, the Court continued:

"The Board argues that the provisions of the Wagner Act, particularly § 9 (d), have foreclosed review of its challenged action by independent suit in the district court, such as was allowed under other acts providing for a limited court review in Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111, and in Utah Fuel Co. v. National Bituminous Coal Comm., 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483; cf. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. But that question is not presented for decision by the record before us. Its answer involves a determination whether the Wagner Act, in so far as it has given legally enforceable rights, has deprived the district courts of some portion of their original jurisdiction conferred by § 24 of the Judicial Code, 28 U.S.C.A. § 41. It can be appropriately answered only upon a showing in such a suit that unlawful action of the Board has inflicted an injury on the petitioners for which the law, apart from the review provisions of the Wagner Act, affords a remedy. This question can be properly and adequately considered only when it is brought to us for review upon a suitable record."

Both counsel for plaintiff and counsel for defendant lay particular emphasis upon the language last quoted, and, in addition, call attention to the construction placed thereon in the later cases of A. F. of L. v. Madden, D. C., 33 F.Supp. 943, and Klein v. Herrick, D.C., 41 F.Supp. 417. The Madden case was between the same parties as were involved in the decision from which we have just quoted, and arose out of the identical facts there presented. The decision by the Supreme Court had been rendered following the granting of a writ of certiorari from the decision of the Court of Appeals in A. F. of L. v. N. L. R. Bd., 70 App.D.C. 62, 103 F.2d 933. The latter case arose out of a petition by the American Federation of Labor filed with the Court of Appeals of the District of Columbia to review the certification by the Board that a certain labor organization was the exclusive representative for longshoremen on the Pacific Coast. The Madden case was a suit in equity brought to set aside the above mentioned certification. In denying a motion to dismiss the latter suit, Justice Bailey quoted the following from the opinion of the Court of Appeals, as reported in 103 F.2d 933, particularly at page 936: " * * * we hold that, though the decision here was required by the Act to be made and to be made on the evidence and argument after judicial hearing, and though it was definitive, adversary, binding, final, and in this case struck at the very roots of petitioner's union and destroyed its effectiveness in a large geographical area of the Nation, it was not an order because the Act did not require it to be made in the language of command, and hence is reviewable—as was held in the Shields case, supra (Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111), and in Utah Fuel Co. v. National Bituminous Coal Commission, [306 U.S. 56], 59 S.Ct. 409, 83 L.Ed. 483, decided Jan. 30, 1939—only in an independent suit in equity commenced in a District Court."

Thereupon Justice Bailey added the following comment [33 F.Supp. 944]: "Accordingly, the plaintiffs have now brought this suit in equity in this court. In view of the above-quoted language of the Court

of Appeals, I see no reason why this suit cannot be maintained. As stated by the Court of Appeals, the complaint shows great and irreparable damage to the plaintiff. The particular form of relief to which the plaintiffs may be entitled can be determined in final hearing." No appeal was taken from this decision.

The case of Klein v. Herrick, D. C., 41 F.Supp. 417, was a suit by the treasurer of a Labor Union against a Regional Director of the National Labor Relations Board, wherein plaintiff moved for an injunction pendente lite restraining defendant from carrying into effect or taking any proceedings under the decision and direction of election of the Board. Defendant moved to dismiss on the grounds that the court lacked jurisdiction of the subject matter, and that the complaint failed to state a cause of action entitling plaintiff to equitable relief. The court denied the application for an injunction and granted the motion to dismiss.

In the course of an illuminating and instructive opinion, Judge Rifkind pointed out that, according to the complaint in the suit before him, the controversy had its root origin in the rivalry of two unions for the patronage of the employees of Presto Recording Corp.; that in 1939 plaintiff union was selected as the exclusive bargaining agent of said employees as the result of an election conducted under Section 9 (c) of the National Labor Relations Act; that on March 9, 1939, an agreement was made between the employer and plaintiff union in behalf of such employees upon the subject of collective bargaining for the term of one year, subject to renewal for an additional two-year period, and that through the exercise of the option to renew the contract had been extended to March 8, 1942; that after hearing the petition of a rival union for certification of a collective bargaining agent for said employees, the Board made a direction ordering an election among the latter; and that accordingly plaintiff union asked the court to restrain defendant from carrying out such direction of the Board.

In his opinion the judge also observed that, while the character of the harm which might befall plaintiff union as a result of defendant's action was not identified in detail in the complaint, nevertheless, the following inferences, among others, might be drawn therefrom: That the threatened election might result in a victory for the rival union; that defendant might certify the rival union as bargaining agent for said employees; that the rival union might seek to negotiate with the employer; that the latter might accede to the request for such negotiations; that such negotiations might result in a contract modifying the existing contract by eliminating the provision therein requiring employees to be members of plaintiff union; and that the courts might hold such modification to be valid and binding.

The judge thereupon proceeded to dispose of the defendant's challenge to the court's jurisdiction over the subject matter. After calling attention to the language heretofore quoted from 308 U. S. 401, 60 S.Ct. 300, 84 L.Ed. 347, and from 103 F.2d 933, he commented that the dictum announced by the Supreme Court with respect to district court jurisdiction was expressly placed in the category of unanswered questions. He then proceeded to summarize the facts involved and the conclusions reached in National Labor Relations Board v. International Brotherhood, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354, and stated that the latter was decided upon the authority of the decision rendered the same day and reported in 308 U. S. 401, 60 S.Ct. 300, 84 L.Ed. 347. He further called attention to the fact that subsequently the same Labor Union instituted suit in the District Court, Eastern District of Michigan, for an injunction restraining the Labor Board and its Regional Director for the Seventh Region from holding an election to choose an exclusive bargaining agent of the employees of Consumers Power Company, that the injunction was granted and that no appeal was taken from this ruling. See 41 F.Supp. 57. Commenting upon these decisions reported in 33 F. Supp. 943, and in 41 F.Supp. 57, respectively, Judge Rifkind observed that they were not distinguishable from the suit before him "on the naked question of jurisdiction over the subject matter, that is, jurisdiction in the broadest sense of power to entertain the application." [41 F.Supp. 422] In that connection, he declared: "In the Madden case and the Electrical Workers case the Board's action did exclude the complaining union, whereas in the instant case plaintiff union is on the ballot, but these decisions cannot be reconciled with the theory advanced by defendant that the equity jurisdiction of the federal courts has been curtailed by the National Labor Relations Act. These decisions are authorities in favor of plaintiff's position."

The judge next considered a contention similar to one raised here by intervenor to the effect that "plaintiff is without remedy except within the framework and through the proceedings contemplated by the Act." Overruling that contention the judge stated:

"The defect in defendant's suggestion is that it assumes that the employer would resist the invitation to negotiate with the rival union, thus necessitating the enforcement machinery of Section 10(b). But suppose the employer acquiesces in the certification of the rival union; then no such proceeding would ensue and, on defendant's theory, plaintiff would never acquire access to any court. Nor would plaintiff itself be in a position to institute proceedings under Section 10(b), since a refusal to bargain with it, as a minority union, is not an unfair labor practice, Section 9(a). In other words, the remedy which would be available to an employer or to the certified union would in fact not be available to plaintiff union. * * *

"Continuing on the assumption that plaintiff is being injured by the action of defendant and is threatened with further injury, it seems clear that the National Labor Relations Act has not provided an internal method of review which would now or hereafter fully afford plaintiff redress of the wrong committed. I do not find in Section 10 an expressed denial of jurisdiction to the district court over a controversy of the character herein described; nor is there any inconsistency between the scheme for review of certain types of action delineated in the Act and the preservation of the court's general equity jurisdiction over controversies not reached by the Act's provisions. I, therefore, find that the court has jurisdiction of the subject matter."

Thereupon, the judge proceeded to dispose of the remaining question, namely, whether the complaint stated a cause of action entitling plaintiff to equitable relief. On that point he held that, in view of the fact that the Board's direction of election to determine the appropriate representative of employees for collective bargaining did not of itself adversely affect the plaintiff which, as the duly selected exclusive bargaining agency for employees, had on their behalf negotiated a contract with the employer, which was still in force, plaintiff's application to enjoin the Board from carrying into effect such direction was premature, citing Section 9(a) (b) of the Act. He also ruled that the allegations of the complaint failed to show that any injury to plaintiff had resulted or was about to result from the action sought to be restrained. He further held that the fact that the existing contract between plaintiff and the employer required all employees to be members of the former should not preclude the holding during the term of such contract of another election at the direction of the Board to determine the appropriate representative of the employees for collective bargaining, citing Sections 1 and 9(c) of the Act. Accordingly, he concluded that the complaint failed to state facts sufficient to constitute a cause of action for equitable relief, and ordered the same dismissed.

The case of United Employees Ass'n v. N. L. R. Board, 3 Cir., 96 F.2d 875, involved a question similar to that subsequently decided by the Supreme Court in A. F. of L. v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347, and a like conclusion was there reached. In the course of its opinion, the Third Circuit Court of Appeals pointed out that under the Act the certification made by the Board and there under attack was not an order, but simply the certification of a fact which might be entirely ignored and disregarded by the employer and the rival labor organization there affected. In other words, as pointed out in that decision, the employer might go on with impunity bargaining with the latter just as though no certification had been made, in spite of the fact that the Board had certified another Labor Union as the exclusive representative of all the employees for the purpose of collective bargaining.

We turn now to a consideration of those decisions upon which counsel for intervenor rely. Some of these, such as In re National Labor Relations Board, 304 U.S. 486, 58 S.Ct. 1001, 82 L.Ed. 1482, Myers v. Bethlehem Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, while illuminating from the standpoint of describing the historical background leading up to the adoption of the National Labor Relations Act and although helpful toward understanding the philosophy of this legislation, nevertheless, arose out of facts which bear no analogy to those involved in the action before us. Hence, we see no occasion for further comment thereon.

Another group of cases, including Marlin-Rockwell Corp. v. National Labor R. Board, 2 Cir., 116 F.2d 586, New York Handkerchief Mfg. Co. v. National Labor R. Bd., 7 Cir., 114 F.2d 144, A. F. of L. v. National Labor R. Board, 70 App.D.C. 62, 103 F.2d 933, and National Labor R. Bd. v. Star Pub. Co., 9 Cir., 97 F.2d 465, involved petitions filed in Circuit Courts of Appeals, pursuant to the provisions of the Act, to review rulings made by the Board in proceedings originally instituted before the latter.

In Marlin-Rockwell Corp. v. N. L. R. Bd., 2 Cir., 116 F.2d 586, the employer petitioned to review an order of the Board, requiring it to deal with a certain Union as the exclusive representative of the employees for purposes of collective bargaining. The employer attacked the validity of such order upon the ground that the union had not been elected by a majority of the employees entitled to vote, but only by a majority of those who voted. In its opinion, after stating that a refusal to bargain with the certified representative, followed by a complaint based thereon and an order of the Board directing the employer to cease from such refusal, was the only way in which certification of a collective bargaining representative could be reviewed (citing A. F. of L. v. National Labor Relations Board, 308 U.S. 401, 60 S. Ct. 300, 84 L.Ed. 347), and after disposing of certain issues not pertinent here, the court declared (see page 588 of 116 F.2d): "Finally it is urged that to be validly elected the bargaining agent must receive the votes of a majority of all employees in the unit appropriate for collective bargaining. Read literally, section 9(a) of the Act, 29 U.S.C.A. § 159(a) seems to require this; but it is so generally the custom in elections to permit a majority of those voting to decide the result, that we think the argument cannot be accepted. Under the Railway Labor Act [45 U.S.C.A. § 151 et seq.] it has been authoritatively held that the vote of a majority of the participants determines the choice, if the election was participated in by a majority of the employees entitled to vote. Virginian Ry. Co. v. System Federation, 300 U.S. 515, 560, 57 S.Ct. 592, 81 L.Ed. 789. The National Labor Relations Act has been similarly construed. National Labor Relations Board v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 477."

In New York Handkerchief Mfg. Co. v. N. L. R. Bd., 7 Cir., 114 F.2d 144, after holding that the findings made by the Board in that proceeding were sustained by the evidence, also after ruling upon other issues not relevant to the suit before us, and after concluding that the Board could utilize an election, if participated in by a majority of the employees entitled to vote, as the basis for certification that the Union thereby selected represented a majority of the employees of the appropriate Unit, the Court decided that under the exceptional conditions found to exist in that case the Board had authority to certify as the employees' collective bargaining representative, the Union which received a majority of the votes cast, even though less than a majority of the employees participated in such election. The ground for the latter decision was that the Board had found upon sufficient evidence that the employer had been guilty of coercion and intimidation against its employees, which no doubt prevented many of them from participating in such election. In that connection, the Court, at page 149 of 114 F.2d, declared: "In the instant case, as found by the Board, petitioner, by its unlawful conduct, interfered with the right of its employees to participate in the election and, no doubt, was responsible for the small proportion of its employees voting. Under such circumstances, we are of the opinion that the Board not only was within its authority, but was justified in concluding that the Union was the proper representative. To hold otherwise would place a premium upon the unlawful conduct of an employer and enable it to frustrate one of the major purposes of the Act—that is, the determination of a proper bargaining agent."

We have already analyzed and quoted from the case of A. F. of L. v. N. L. R. Bd., 70 App.D.C. 62, 103 F.2d 933, and hence deem it unnecessary to make any further comment thereon.

In N. L. R. Bd. v. Star Pub. Co., 97 F. 2d 465, the Board filed a petition with the Ninth Circuit Court of Appeals for the enforcement of an order granted by the Board directing an employer to cease and desist from certain unfair labor practices. The only matters there decided were that the circumstance that the acts complained of arose out of a jurisdictional dispute between two rival Unions, each of which had been organized under a charter issued by the American Federation of Labor, which required all such disputes to be determined by the Federation, did not deprive the Board of the power vested in it by the Act to pass upon the controversy; and

further that the Board, while hearing the proceeding initiated before it, had not abused its discretion in denying a petition for leave to intervene, filed by certain employees who objected to the Board's jurisdiction to hear the controversy upon the ground, among others, that the dispute was within the jurisdiction of the Federation.

Virtually all of the remaining cases cited on behalf of intervenor deal with the definition of the term "labor dispute", and with the limitations imposed by the provisions of the Norris-La Guardia Act circumscribing the conditions under which Federal Courts may issue injunctions in such disputes. These citations include the decisions in Milk Wagon Drivers' Union v. Lake Valley Products, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012; Senn v. Tile Layers Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; Green v. Obergfell, 73 App.D.C. 298, 121 F.2d 46, 138 A.L.R. 258, Amalgamated Meat Cutters, etc., v. Spreckels, 9 Cir., 119 F.2d 64; International Brotherhood, etc. v. International Union, etc., 9 Cir., 106 F.2d 871; Fur Workers Union, Local No. 72 v. Fur Workers Union, 70 App.D.C. 122, 105 F.2d 1; Burlington Mills Corp. v. Textile Workers Union, D.C., 44 F.Supp. 699, and Cole v. Atlanta Terminal Co., D.C., 15 F.Supp. 131.

In the first of these cases, the Supreme Court held that a controversy concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange, terms or conditions of employment was expressly included within the definition of a labor dispute in the Norris-La Guardia Act. The Court further ruled that the latter statute was intended drastically to curtail the equity jurisdiction of Federal Courts in the field of labor disputes.

The case of Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872, arose in the District Court for the Eastern District of Wisconsin. It was a suit to restrain the members of a labor Union from picketing the employer's place of business, also from coercing it to discharge any of its employees not belonging to the Union or to compel the employees to become members of the Union and to accept it as their bargaining agent and from advertising that the employer was unfair to organized labor, or molesting the customers or prospective customers, or persuading them to cease patronizing the employer. The facts there showed that the Union had committed the acts complained of and sought to be restrained, and that none of the employees belonged to the Union and had refused to join the same. In reversing a decree of the trial court, which had been affirmed by the Seventh Circuit Court of Appeals, 90 F.2d 250, the Supreme Court ruled that as the acts complained of occurred in Wisconsin, the law of that state governed the substantive rights of the parties, and that under the Wisconsin Labor Code such acts constituted a labor dispute. The Court further decided that the definition of the term "labor dispute" was substantially the same in both the Wisconsin statute and also in the Norris-La Guardia Act. Finally, it was there held that since the District Court had made none of the findings required by the latter Act, save as to irreparable injury and lack of remedy at law, it had exceeded its jurisdiction. "There can be no question of the power of Congress", declared the Court, "thus to define and limit the jurisdiction of the inferior courts of the United States." [303 U.S. 323, 58 S.Ct. 582, 82 L.Ed. 872.]

In New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 705, 82 L.Ed. 1012, it appeared that an association of Negroes, organized for the mutual improvement of its members and the promotion of civic and other worthy enterprises, requested a grocery company to adopt a policy of employing negro clerks in certain stores patronized largely by colored people but in which no colored clerks were employed. The request having been ignored, the association caused a picket bearing a placard reading: "Do your Part! Buy Where You Can Work! No Negroes Employed Here!" to patrol in front of one of the stores and threatened to cause a similar patrol of two other stores. The trial court decided the case on the bill and answer and granted an injunction restraining the association and its members from picketing, boycotting, etc., the stores involved. The case as it stood for judgment, as pointed out by the Supreme Court, was this: The members of the association requested the Grocery Co. to adopt a policy of employing negro clerks in certain of its stores in the course of personnel changes. The Grocery Co. ignored the request, and the members of the association caused one person to patrol in

front of one of the company's stores on one day, carrying a placard bearing the language above quoted, and caused or threatened a similar patrol of two other stores of the company. The information borne by the placard was true. The patrolling did not coerce or intimidate the company's customers; did not physically obstruct, interfere with or harass persons desiring to enter the store; the picket acted in an orderly manner and his conduct did not cause crowds to gather in front of the store.

The decree of the lower court was affirmed by the Court of Appeals for the District of Columbia. 67 App.D.C. 359, 92 F. 2d 510. The Supreme Court reversed upon the ground that, within the meaning of the Norris-La Guardia Act, there was a labor dispute in which the Negro organization and its officers were persons interested. The Court pointed out that the language of section 13 of the latter statute was sufficiently broad to include within the definition of the term "labor dispute", not only disputes between employers and employees and disputes between associations of persons engaged in a particular trade or craft and employers in the same industry, but also controversies other than those between employers and employees, also between labor unions seeking to represent employees and employers, and also between persons seeking employment and employers.

The Court further held that under the provisions of section 7 of that Act courts are deprived of jurisdiction to issue an injunction in any case involving or growing out of a labor dispute, except after hearing sworn testimony in open court in support of the allegations of the complaint, and upon findings of fact to the effect (a) that unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued, unless restrained, and then only against the person or persons, association or organization making the threat or committing the unlawful act or authorizing or ratifying it; (b) that substantial and irreparable injury to complainant's property will follow; (c) that, as to each item of relief granted, greater injury will be inflicted upon the complainant by denial of the relief than will be inflicted on the defendant by granting it; (d) that complainant has no adequate remedy at law and (e) that the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection. Accordingly, the court held that since no findings had been made

by the trial court and since the record otherwise was insufficient to meet the requirements of Section 7 of the Statute, the District Court lacked jurisdiction to grant injunctive relief.

The case of Senn v. Tile Layers Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229, involved the construction of certain sections of the Wisconsin Labor Code, including certain provisions therein defining what constitutes a labor dispute, and also provisions prescribing what acts may be committed by a labor union during the pendency of a labor dispute. The court ruled that the questions of what constitutes a labor dispute, and what acts done by a labor union are among those declared lawful, within the meaning of that Code, were questions of state law, and further held that those particular provisions did not violate the Fourteenth Amendment.

In Green v. Obergfell, 73 App.D.C. 298, 121 F.2d 46, 138 A.L.R. 258, the Brewers Union, an affiliate of the American Federation of Labor, brought suit against the latter organization and the Teamsters Union, also an affiliate of the same organization, to enjoin the transfer of beer drivers from the plaintiff to the Teamsters Union, such transfer having been authorized by the parent organization. The trial court awarded a decree enjoining the defendants as prayed for. On appeal the injunction was dissolved and the decree reversed. The Court of Appeals for the District of Columbia ruled that the suit involved a labor dispute within the Norris-La Guardia Act; and that the essence of the dispute was the right of the Brewers Union on the one hand and of the Teamsters Union on the other to organize the drivers of brewery wagons and trucks. It was also there decided that the disputants need not stand in the relation of employer and employee for the case to involve a labor dispute within the meaning of the latter statute. The upper court further held that, since no finding had been made by the trial court that public officials charged with the duty of protecting complainant's property were unable or unwilling to furnish adequate protection, one of the essential requirements prescribed by that statute for the issuance of an injunction had not been met, and therefore the lower court had no jurisdiction to grant injunctive relief.

In Amalgamated Meat Cutters, etc. v. Spreckels, 119 F.2d 64, the Ninth Circuit Court of Appeals passed upon only one is-

sue, namely, decided that where a labor union filed suit in a District Court to restrain a Regional Director of the National Labor Relations Board, individually, from interfering with the performance of an employment contract between an employer and the union, and where the complaint failed to allege that any provision of the National Labor Relations Act was violated, or that such Director's acts violated any federal statute or the Constitution of the United States, and where neither diversity of citizenship nor the amount of damages was pleaded, the District Court had no jurisdiction of the action, and that only the state courts could pass upon such litigation. In that connection the court further held that a mere unsupported information and belief allegation that such Director had advised another labor organization to make a contract with the employer was not sufficient to entitle plaintiff to an injunction restraining him from interfering with the performance of a contract theretofore made between the employer and plaintiff.

The case of International Brotherhood, etc., v. International Union, etc., 9 Cir., 106 F.2d 871, was a suit originally filed in a District Court by the Brewery Workers Union against certain employers, namely, defendant breweries, and against the Teamsters Union for declaratory relief and for an injunction restraining the Teamsters Union from interfering with the employer-employee relationship of the breweries and plaintiff union. The facts disclosed that both unions were affiliated with the American Federation of Labor, and that each operated under a charter which required, among other matters, that disputes between such unions be settled by the Federation. The trial court granted the declaratory and injunctive relief prayed for.

On appeal such decree was reversed. The Ninth Circuit Court of Appeals held that the aforementioned charter provisions did not deprive the National Labor Relations Board of power to determine which union was the proper bargaining agent to represent the employees involved, since such charter provisions were subject to the exercise by Congress of the power to regulate commerce as expressed in the National Labor Relations Act. It was also there decided that since the employees, also the Brewery Workers Union and the breweries had an administrative tribunal established by Congress by said Act for the specific purpose of determining the controversy concerning the bargaining agent, the decision of the latter tribunal, and not the Federal Court, first must be sought. Citing Myers v. Bethelehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and Fur Workers Union, etc., v. Fur Workers Union, 70 App.D.C. 122, 105 F.2d 1.

Replying to the contention there made that certification by the Board would not be a final order, would not be subject to review nor enforceable by the Board nor anyone aggrieved and hence would not be a remedy which the employees or union claiming representation rights first should seek, the higher court stated (see page 876 of 106 F.2d): "Whether or not certification by the Board be denominated a remedy, it is a determination which we must assume will be observed. However, if the relationship, the existence of which is certified by the Board, be unlawfully interfered with, and if the Board's powers afford inadequate protection to the employees and their union agent, *it may well be that under the principles of equity the aid of the courts may be invoked.*" (Italics ours)

The same court further ruled that since the suit was one to enjoin boycott and acts of persuasion and coercion to compel recognition of one union as the employees' bargaining agent, which acts were alleged to be an illegal interference with the right of another union to represent such employees, the litigation involved a labor dispute within the provisions of the Norris-La Guardia Act, citing Lauf v. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872, and New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012.

Thereupon the court declared (see page 877 of 106 F.2d): "Since the acts enjoined were committed in the course of and for the purposes of furthering the Teamsters' aims in a labor dispute as defined in the Norris-La Guardia Act, it was beyond the power of the court to enjoin any of them, so far as they are lawful. Insofar as the acts are found to be unlawful, the Norris-La Guardia Act permits injunctive relief only if it be shown, inter alia, that 'the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.' Section 7(e) 47 Stats. 71, 29 U.S.C.A. § 107(e). Neither the pleadings nor findings mention the public officers, much less any inability or unwillingness on their part to furnish such protection."

Accordingly, the lower court's decree was reversed, the injunction ordered dissolved, and the cause was remanded with leave to the parties to amend their pleadings to show facts bringing the case within the exceptions specified in Sections 4 and 7 of said Act.

In Fur Workers Union, Local No. 72 v. Fur Workers Union, 70 App.D.C. 122, 105 F.2d 1, suit was filed by one labor union and an employer against another labor union, to enjoin the latter from picketing the employer's place of business. The evidence showed that all of the fur workers employed by a certain firm were members of plaintiff union, and through the latter entered into an agreement with the employer whereby said union was accepted as the exclusive representative for collective bargaining of all of said employees. The evidence further disclosed that the purpose of the picketing was to coerce the employer and its employees to violate said collective bargaining agreement; also that the persons engaged in picketing were disorderly, made assaults and attempted assaults, upon the employees, intimidated and coerced them by threats of bodily harm and interfered with customers. The trial court also found that no labor dispute existed and made no finding that unlawful acts would be continued unless restrained, or that substantial and irreparable injury to property would follow, or that as to each item of relief granted greater injury would be inflicted upon the employer or the employees by the denial of relief than upon the defendant union by the granting of it, or that the employees or the employer had no adequate remedy at law, or that the public officers charged with the duty of protecting the property of the employees or the employer were unable or unwilling to furnish adequate protection. It was also found that the aforementioned collective bargaining agreement had been negotiated and consummated pursuant to the provisions of the National Labor Relations Act, and that the picketing was without justification and unlawful. A permanent injunction was granted as prayed for.

On appeal, a reversal was ordered with directions to dissolve the injunction and dismiss the bill, upon the ground that a labor dispute existed between the parties, and also, since the complete findings required by Sec. 7 of the Norris-La Guardia Act had not been made, the trial court lacked jurisdiction to issue the injunction. The Court of Appeals for the District of Columbia cited Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Blankenship v. Kurfman, 7 Cir., 96 F.2d 450; Lund v. Woodenware Workers Union, D.C., 19 F.Supp. 607, and other cases, as supporting its conclusions.

Commenting upon the case of Oberman & Co. v. United Garment Workers, D.C., 21 F.Supp. 20—relied upon by plaintiff here, as well as by appellees in the latter case—the Court of Appeals pointed out that in the case last cited the facts were briefly as follows: The employer had entered into a closed shop contract with an association of its employees. Defendant Labor Union demanded that it be given a contract recognizing it as the sole bargaining agency of the employees, and conducted a strike with such violence as to necessitate closing the establishment. Thereafter, proceedings were had before the National Labor Relations Board with the result that the employees association, rather than defendant, was certified as the proper bargaining agency. Notwithstanding this, defendant continued the strike. Thereupon the employer filed suit, and the District Court issued an injunction restraining the defendant Union from picketing the establishment. In declining to follow such decision the Court of Appeals called attention to the fact that the conclusion there reached was much weakened by the circumstance that said decision had been rendered prior to the Supreme Court decision in the case of Lauf v. E. G. Shinner & Co., supra.

The case of Blankenship v. Kurfman, 7 Cir., 96 F.2d 450, was a suit commenced in the District Court, filed by the members of one labor union against the members of another labor union, both organizations being affiliated with the American Federation of Labor, to enjoin the defendants from interfering with, threatening, etc., the plaintiffs while in the course of their employment. Plaintiff union had entered into a contract with the employer, whereby the former was designated as the representative of the employees. Defendant union, being unable to obtain from the employer a contract designating defendant as such representative, threatened and otherwise interfered with the employees to the extent that many of the latter were intimidated and abandoned their work. There was no diversity of citizenship between the parties. The trial court granted injunctive relief upon the

grounds that defendants had committed unlawful acts which deprived plaintiffs of the free exercise and enjoyment of rights and privileges secured to them by the National Labor Relations Act, also that such acts affected the free flow of commerce among the several states, that, if the acts of defendants were to continue, substantial and irreparable injury to plaintiffs' property would result, and that the case did not involve a controversy between an employer and its employees.

In reversing the lower court the Seventh Circuit Court of Appeals pointed out that, in view of the definition of the term "labor dispute" announced in the cases of Senn v. Tile Layers P. Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; Lauf v. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012, and Lund v. Woodenware Workers Union, D.C., 19 F.Supp. 607, the facts established in the District Court constituted a "case involving or growing out of a labor dispute" [96 F.2d 453], as defined in the Norris-La Guardia Act. Accordingly, the upper court ruled that the District Court was without jurisdiction to issue the injunction without complying with the provisions of that Act, and, since there had not been such compliance, a reversal was ordered. In that connection, after overruling the contention there made to the effect that the National Labor Relations Act created a Federal right, the violation of which by defendants entitled plaintiffs to injunctive relief, and after observing that it agreed with the conclusion reached in the case of Lund v. Woodenware Workers Union, supra, the upper court declared: "The general purpose of the National Labor Relations Act is to provide methods of preventing or eliminating certain 'unfair practices' which have heretofore characterized the relation of employer and employee, and which have obstructed, or tended to obstruct, the free flow of commerce. The act creates certain rights and duties as between employer and employee and provides the procedure necessary to give effect thereto. It seems clear that the only rights which are made enforceable by the act are those which have been determined by the National Labor Relations Board to exist under the facts of each case; and when these rights have been determined, the method of enforcing them which is provided by the Act itself must be followed. And we find no provision in the act which can be construed as intending to create rights for employees which can be enforced in federal courts independently of action by the National Labor Relations Board. Consequently, we hold that the contract in the instant case between the plaintiffs and their employer did not, by force of the National Labor Relations Act, create a right in the plaintiffs which was secured to them 'by the Constitution or laws of the United States.' Consequently, the alleged unlawful interference by the defendants with the plaintiffs' contractual rights did not give a cause of action of which a federal court would have jurisdiction in the absence of diversity of citizenship."

At this point it should be observed that in the case of United Electrical R. & M. P. Workers v. I. B. of E. Workers, 115 F.2d 488, the Second Circuit Court of Appeals likewise indicated its disapproval of the decision rendered in Oberman & Co. v. United Garment Workers, supra. See page 491 of 115 F.2d. The former was a suit brought by one labor union against several other labor unions and also several employers. The complaint there alleged, among other matters, that plaintiff had been chosen as collective bargaining representative by numerous employees of one of the defendant employers, also that it had been certified on numerous occasions by the National Labor Relations Board, that thus it had become the representative of the majority of employees in the electrical machinery industry and had been certified as such in a vast majority of the cases wherein disputes had arisen. It was further averred that the defendants had conspired to deprive the plaintiff of the right conferred upon and guaranteed, to-wit, by the National Labor Relations Act, as the representative of its members and other workers in said industry for collective bargaining, and that defendants had carried out such conspiracy by various devices, with the result that many employees who would otherwise have chosen plaintiff had been led to choose one of the defendant unions as bargaining representative, thereby causing plaintiff to suffer damage in the amount of $250,000. Upon such allegations, plaintiff sought to recover damages and also injunctive relief. The trial court dismissed the complaint for insufficiency upon its face, and, on appeal, said ruling was affirmed. The Second Circuit Court of Appeals held that the provision of the National Labor Relations Act securing employees' right of collective bargaining did

not merely give new remedies for violations of rights created by the states, but set up a procedure to protect a right which the Act itself had basically reconstructed; that such provision did not protect a trade union against loss of its members as the result of an alleged conspiracy between competing unions and employers to boycott, or threaten to boycott, employees belonging to such union, except as an incident to the determination by the Board of the union's right to act as a bargaining representative; and that the procedure set forth in the Act was the full measure of remedies available to the union for violation of that right. It was also there decided that in enacting this statute Congress meant to entrust to the Board the choice of bargaining representatives, subject only to such review as might be possible under the Act. It was further there held that a suit by such union for loss of its members as the result of such a conspiracy did not arise under the laws of the United States. In the course of its opinion, the Second Circuit Court of Appeals, at page 491, 115 F.2d, declared:

"But here we have to deal with the efforts of a competing union to obstruct the free choice of another union as bargaining representative; and we think that to allow courts to decide that issue might impair, and on occasion actually nullify, the plan as a whole. It is true, as the plaintiff says, that the Board has no preventive jurisdiction over unlawful acts of the defendant unions; it cannot order them 'to cease and desist,' and for that reason a court alone could nip the plaintiff's wrongs in the bud and protect it from losing members, to the damage of its pocket and its prestige and to the loss of its position as bargaining representative. It is, however, not true that the Board has no kind of jurisdiction; § 9(c) gives it complete power over the choice of bargaining representatives; it may investigate all disputes 'concerning the representation of employees' and 'certify' the winner ordering a new election if need be. In such an investigation it would be charged with the duty of examining whether the 'right secured' by § 7 had been violated; an election secured by unlawful means is no election at all, and the Board would be bound to cancel it and take proper measures to eliminate from the new election the effect of past wrongs, as much when they emanated from a competing union, as when they did from an employer. The issues determined by the judgment here will therefore be, or at least may be,

the same as those which the Board must determine if and when the plaintiff, having been displaced, seeks to reëstablish itself as bargaining representative. From this it is evident that if a judgment here would be res judicata in such sense as to conclude the Board, the action must certainly fail; Congress meant above all to entrust to it the choice of bargaining representatives, subject only to such review as might be possible under § 9(d); it would certainly circumscribe its authority to subject it to the estoppel of a judgment inter partes. If on the other hand the judgment would not be res judicata as to the Board, it would, if successful, control the conduct of the defendants meanwhile; before the question reached the Board in a proceeding under § 9(c), it would enjoin them from proselytizing on the theory that they were violating the 'right secured' by § 7. But that would as much obstruct the exercise of the Board's functions as though the judgment were an estoppel, because the Board might not agree with the court that the conduct enjoined did in fact violate the 'right secured' by § 7. Yet when the Board came to choose the bargaining representative under § 9(c), the defendants would have been cut off from electioneering which the court thought wrongful but which the Board did not, and it would not appear what effect that might have had upon the election. The Board would be faced with a status quo which it could not remedy, but which it would not have countenanced if it could have helped. We are not clear that Oberman & Co. v. United Garment Workers, D.C., 21 F.Supp. 20, must be construed otherwise, but if so we cannot agree.

"We do not hold that the plaintiff has no recourse to any court for the loss of its members; that may, or may not, be so. But if it has, the suit does not 'arise under the * * * laws of the United States,' the only basis of jurisdiction here put forward; its gravamen must be a violation of the law of a state, but § 7 does not protect a union against that kind of wrong committed by a competing union except as an incident to the determination by the Board of its right to act as a bargaining representative."

We have heretofore referred to the case of Lund v. Woodenware Workers Union, D.C., 19 F.Supp. 607. That was a suit brought by an employer to enjoin a striking minority of employees from interfering by violence or intimidation with a contract

which had been made by the employer with representatives selected by the alleged majority of the employees. The Court denied the injunction. It ruled that the fact, that the employer had made a valid contract with his employees or with representatives selected by an alleged majority thereof for collective bargaining, did not alone give rise to any justiciable controversy in a Federal court under the National Labor Relations Act; also that, in the absence of diverse citizenship, an employer was not entitled to proceed in a Federal court to enjoin a striking minority of his employees from interfering by violence or intimidation with a contract made by the employer with representatives selected by an alleged majority of the employees for collective bargaining; further that whenever a situation required relief because of the violation of said Act, the National Labor Relations Board was vested with exclusive jurisdiction to effect the remedy; and that no proceedings between employer and employee under such Act were entitled to any protection by the Court until some affirmative action had been taken by the Board. In addition, the Court there held that the employer's complaint to enjoin a striking minority of his employees from interfering with such contract, in the absence of an allegation of an approval or sanction of such contract by the Board, did not present a substantial question arising under a Federal statute.

Applying to the record in the action at Bar the principles expounded in the aforementioned decisions of the Supreme Court and those rendered in conformity therewith by the several Appellate and District Courts, we conclude:

That the contract, which plaintiff seeks to enforce by the present suit, was entered into between plaintiff and defendant, under date of May 21, 1943, to secure the designation of plaintiff as exclusive representative of defendant's employees involved herein for collective bargaining purposes.

That said contract was entered into during the pendency of proceedings before the National Labor Relations Board, to determine whether plaintiff or intervenor should be designated as such representative and that plaintiff, defendant and intervenor were among the parties to, and participated in, said proceedings.

That prior to the making of said contract one election had been held, pursuant to the direction of said Board, among said employees to determine whether plaintiff or intervenor should be designated as such representative, that said Board had directed the holding of another or run-off election for a like purpose, and that such run-off election was held on June 2, 1943.

That, shortly thereafter, and for a similar purpose, said Board had directed the holding of a second run-off election, and that the same was held on June 24, 1943.

That plaintiff did not oppose the holding of any of said elections; that it actively participated therein, and at each of said elections plaintiff sought to obtain a majority of the votes cast, to the end that it should be selected as such representative.

That, following the holding of said last election, plaintiff filed with said Board objections respecting the same, claiming that certain irregularities and errors had been committed by the Board's representative in conducting the same, and that thereby the election held on June 24, 1943, was invalid.

That plaintiff requested a hearing upon said objections, but the Board denied such hearing, overruled said objections, also found that a majority of the employees voting at said election had selected intervenor as their exclusive representative for collective bargaining purposes, and issued a certificate to the effect that intervenor be recognized as such representative.

That the aforementioned objections are the only ones which plaintiff has interposed respecting the conduct of any of said elections.

That at none of said elections did plaintiff receive a majority of the votes cast by the employees participating therein.

That the aforementioned rulings of the Board are the only ones of which plaintiff has complained.

That assuming, without deciding, that said rulings of the Board are erroneous, or otherwise are subject to legal attack, the Board is entitled to be heard thereon.

That although the present case is denominated as an action to enjoin defendant from violating the terms of said contract of May 21, 1943, in reality it is a suit brought by plaintiff to be relieved from the effect of the aforementioned rulings of the Board without, however, making the latter a party to the litigation.

That assuming, without deciding, that plaintiff is entitled to bring a suit in equity against the Board upon the ground that its

rulings are invalid, the present case is not such a suit.

That the action at bar arises out of a controversy which concerns the association or representation of certain of the defendant's employees in negotiating, fixing, or seeking to arrange terms or conditions of employment; in other words, that the essence of the controversy is the right of plaintiff labor organization, on the one hand, and that of the intervenor, on the other, to organize certain employees of defendant, and hence that such controversy constitutes a labor dispute within the meaning of the provisions of both the National Labor Relations Act and the Norris-La Guardia Act.

That the record in the instant suit is insufficient to establish (a) that unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued unless restrained; (b) that as to each item of relief granted greater injury will be inflicted upon plaintiff by denial of the relief than will be inflicted on the intervenor by granting it; and (c) that the public officers charged with the duty to protect plaintiff's property are unable or unwilling to furnish adequate protection.

That hence this Court is without jurisdiction to grant the injunctive relief prayed for.

That therefore intervenor is entitled to a decree vacating and setting aside the injunction heretofore granted herein and dismissing the complaint.