**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, STABLEMEN AND HELPERS et al. v. INTERNATIONAL UNION OF UNITED BREWERY, FLOUR, CEREAL AND SOFT DRINK WORKERS OF AMERICA et al.**

No. 9068.

Circuit Court of Appeals, Ninth Circuit.

Sept. 19, 1939.

As Amended on Denial of Rehearing Nov. 8, 1939.

George F. Vanderveer and Samuel B. Bassett, both of Seattle, Wash., and Otto Christensen, of Los Angeles, Cal., for appellants.

W. H. Metson and P. H. McCarthy, Jr., both of San Francisco, Cal., and Saul S. Klein, of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree of the District Court declaratively adjudging that a union, hereafter called Brewery Workers Union, is the sole bargaining agent for certain employees of certain breweries in California, Oregon and Washington and that the employing breweries shall deal solely with that union as the collective bargaining agent of their employees, and enjoining another union, hereafter called the Teamsters Union, claiming to have been designated and selected as the employees' bargaining agent, from interfering by force and violence or otherwise with the employer-employee relationship of the breweries and brewery workers, or the breweries' business. The parties, pertinent portions of the

pleadings, relief sought and facts found, so far as this opinion requires, are:

The individual plaintiffs, Henry Jennichen, Fred Heussler and Theodore Day, sue on their own behalf as employees of the defendant Breweries in California, Oregon and Washington and on behalf of some two thousand seven hundred employees similarly situated, and are hereafter called Employees.

The plaintiff International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America sues in a claimed capacity as the designated and selected representative of the employees of the defendant Breweries employed in the Brewing, Bottling and Delivery departments and each and all of them of the defendant Breweries and in no other capacity and is hereafter called Brewery Workers Union.

The defendants, International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers and its local unions and subordinate bodies, are sued herein as unincorporated associations of individuals and they together with the individual defendants are hereafter called Teamsters' Union.

The defendant California State Brewers Institute is sued herein as the representative of the defendant Breweries and is hereafter called Institute.

The defendant Brewing Companies and each of them is sued as a corporation engaged in the manufacture of products of the brewing industry, to-wit, malt beverages, and the employers of the plaintiff employees and are hereafter called Breweries. The Breweries' beer in substantial quantities was sold and transported out of one state and into another and sometimes into a third state.

The American Federation of Labor, hereafter called the Federation, is not a party to this action.

The Brewery Workers Union is a so-called vertical or industrial union including three crafts, the brewers, bottlers and shipping and delivery men. The Teamsters' Union is a union of employees engaged in the craft of shipping and delivery of all kinds.

For more than twenty-five years last past all of the Employees in the brewing, bottling and shipping departments of the Breweries have been represented in collective bargaining with their employers, the Breweries, by the Brewery Workers Union.

After the passage of the National Labor Relations Act, Act of July 5, 1935, 49 Stats. 449, 29 U.S.C.A. §§ 151–166, all of the Employees employed in the brewing, bottling and delivery departments of the Breweries designated and selected in writing the Brewery Workers Union as their sole and exclusive representative for collective bargaining with respect to wages, rates of pay, hours of labor and other conditions of employment with their employers, the Breweries. These writings were delivered to the Breweries and the Institute in 1936 and again in 1937.

Prior to the passage of the National Labor Relations Act, supra, the Breweries and Institute signed a document which purported to bind the Breweries to employ only members of the Teamsters' Union in their delivery department and which by its terms ended not later than May 6, 1937. The purpose of this arrangement was and the result would be to force all of the Employees in the delivery department either to surrender their jobs or to join the Teamsters' Union. At no time had any of the Employees in the delivery department of the Breweries belonged to the Teamsters' Union.

Having signed these documents the Breweries, after the effective date of the National Labor Relations Act, supra, were pressed by the Teamsters' Union to employ only members of the Teamsters' Union, which would have necessitated the discharge of their present Employees. Upon the refusal of the Breweries to discharge their employees, the Teamsters' Union, whose trucks carried interstate and otherwise the Breweries' beer, declined to carry it. The Teamsters' Union also instituted and carried on, and was carrying on at the date of the trial, a boycott in the states of Washington and Oregon on California beer manufactured by the Breweries and since the commencement of the boycott in June of 1937, the products of the Breweries have not been handled in the states of Oregon and Washington except in a limited degree. The Teamsters' Union also set in motion a reign of violence and intimidation directed at the Breweries and Employees.

The result of that boycott and these acts instituted and maintained by the Teamsters' Union in the states of Oregon and Washington was and has been to reduce substantially the work of the Employees in the Breweries and the amount of interstate commerce in the malt beverages.

The Employees' and Brewery Workers' Union's complaint stated the above facts and sought the declaratory relief and injunction granted by the trial court. The Teamsters answered and filed a cross-complaint alleging that the Brewery Workers Union and the Teamsters are affiliated members of the Federation; that by contractual relations between the two unions and their employee members and the Federation, the Employees had given the Federation the power to declare the Brewery Workers Union·not the bargaining agent of the Employees engaged in transportation and delivering the Breweries' malt beverages, and.to designate and select for the Employees their exclusive bargaining agent, and that.the Federation has exercised the power and designated and selected the Teamsters' Union as such an exclusive bargaining agent. The Teamsters' Union has offered evidence,of the charters of the two unions, the constitution of the Federation in which they are affiliated and·the action of the Federation, tending to establish such a designation and selection of that union as the Employees' bargaining agent.

·. .The complaint also·joined the Breweries and the Institute as defendants and, in cross-complaints, the, two latter sought a declaration of the rights of the parties with·reference to the Breweries' and Institute's obligation to the Brewery Workers Union and the Teamsters' Union, particularly with reference to which union was the bargaining agent of the Employees. They also sought an injunction against the Teamsters' Union.

### (A) Jurisdiction for declaratory relief.

The National Labor Relations Act in Section 9(c), 49 Stats. 453, 29 U.S.C.A. § 159(c), provides: "(c) Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the.parties, in ,writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due' notice, either in conjunction with a proceeding under section 10 [160 of this title] or otherwise, and.may take a secret ballot of employees, or utilize any other suitable method to ascertin [sic] such representatives."

Regulations promulgated by the Board since the decision below established the method by which both the employers and the employees are to petition the Board to have it determine which of the two unions is entitled to act as the bargaining agent.[1]

■ There is no merit in the contention made that because both unions are members of the American Federation of Labor, the Board has no power to determine which union is the bargaining agent. If the word "may" as used in Section 9(c) of the Act means "must", the Board cannot refuse to decide the question concerning the employ-

---

[1] "Article III

"Procedure under Section 9 (c) of the Act for the Investigation and Certification of Representatives.

"Section 1. A petition requesting the Board to investigate and certify under Section 9 (c) of the Act the name or names of the ·representatives designated or selected'·for· the purpose of collective bargaining may be filed by an employee or any person or labor organization acting on behalf of employees, or by an employer. Except as provided in Section 10 of this Article, such petition shall be filed with the Regional Director for the Region wherein the, contemplated bargaining 'unit exists, or, if the contemplated bargaining unit exists in two or more Regions, with the Regional Director for any such Regions. Such petition shall be in writing, the original being signed and sworn to before any notary public or other person duly authorized by law to administer oaths and take acknowledgments or any agent of the Board authorized to administer oaths or acknowledgments. Three additional copies of the petition shall be filed.*

" * Blank forms for filing such petitions will be supplied· by the Regional Director:upon request.

"Sec. 2. (a) Such petition, when filed by an employee or any person or labor organization acting on behalf of employees, shall contain the, following:

"(1) The name and address of the petitioncr.

"(2) The name and address of the employer or employers involved, the general nature of their businesses, and the approximate number of their employees.

"(3) A description of the bargaining unit which petitioner claims is appropriate and the approximate number of employees in such unit.

"(4)· The number or percentage of employees in such unit who have designated or selected petitioner to be their representative for collective bargaining.

"(5) The names of any other known individuals or labor organizations which

ers' duty to bargain with one or the other of the contending unions. If "may" is construed to confer a discretionary power on the Board, it is a legal discretion which in the instant case the Board should exercise to effectuate the declared purposes of the Act.

The exercise of the Board's power cannot be avoided by a finding by the Board that the unions and Federation have contractual relations which, in the absence of the National Labor Relations Act, would require the dispute to be settled by the Federation. Congress makes no such reservation from the jurisdiction of the Board. On the contrary, one of the purposes of the Act was to afford both employer and employee a public tribunal in which a prompt decision would be given to determine with whom the employer should bargain. This purpose appears in that portion of the declaration of policy of the Act stating, * * * "It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." National Labor Relations Act, § 1, 49 Stats. 449, 450, 29 U.S.C.A. § 151.

As this court has held in refusing an intervention of a union for the purpose of showing that the right to strike was a matter of the Federation's concern and not that of the Board, "The proposed interveners urge that the dispute, as to which union has jurisdiction, by virtue of the charter provisions should be determined by the Federation, and rely on cases where the courts have declined to enter into a dispute which could be settled by the union. The charter provisions cannot be permitted to control an exercise by Congress of the power to regulate commerce, and the contractual relationships arising under the charter provisions are subject to the exercise of that power." National Labor Relations Board v. Star Pub. Co., 9 Cir., 97 F.2d 465, 470.

Nor is there merit in the contention that because the only unfair labor practices subject to Board prevention are those of the employer, the latter, in procuring from the Board the determination of which of two unions is the legally designated and selected agent, is doing nothing for the employees whose protection is the primary aim of the legislation. We do not believe Congress contemplated a necessary hostility between the employees and their employer and that the traditional amity of a group of human beings in an enterprise creating beer or bedsteads or beneficent surgical instruments hopelessly has disappeared in an eternal class war.

It so happens that here all of the employees are members of one union. However, in the greater number of cases some of the employees belong to one union and some to another. While some of the employees of both groups are undoubtedly vitally and primarily concerned with the success of the particular union to which they belong in the controversy between the two

---

claim to represent any of the employees in the alleged bargaining unit.

"(6) A brief statement setting forth the nature of the question that has arisen concerning representation.

"(7) Any other relevant facts.

"(b) Such petition, when filed by an employer, shall contain the following:

"(1) The name and address of the petitioner.

"(2) The general nature of the business and the approximate number of employees.

"(3) A description of the bargaining unit or units claimed by competing labor organizations to be appropriate, and the approximate number of employees in such unit or units.

"(4) The names of all known individuals or labor organizations which claim

to represent any of the employees in the claimed bargaining unit or units.

"(5) A brief statement setting forth that a question or controversy affecting commerce has arisen concerning the representation of employees **in that two or more such labor organizations have presented to the employer conflicting claims that each represents a majority of the employees in the unit or units set forth above in paragraph 2 (b) (3).**

"(6) Any other relevant facts.

* * * * * ".

(Emphasis supplied)

National Labor Relations Board
Rules and Regulations
Series 2
Effective July 14, 1939.

unions, there is still a great body of employees who are anxious to serve their employers in a happy relationship and to have certainty in their incomes for the support and nurture of their families and the education of their children and, often, the payment of installments on their homes.

These deprecate internecine union battles where both unions decline a governmental decision on their differences and have a policy of fighting it out by strike, boycotts and other methods, legal and illegal. They welcome the insistence of the employer in procuring peace and stability in the institution which at once yields wages to the laborer and payments of the other corporate indebtedness and may yield dividends to the stockholder. In such a situation it may well be that the employer owes a moral obligation to the employees to initiate the proceedings which will bring peace to all who are ground between the upper and nether stones of factional disputes. To construe the Act differently is to ignore the fact that laws are passed by human beings for human beings living in a world as it is and not in one of economic or logical abstractions.

■ Nor is there merit in the contention that because it is clear what the decision of the Board will be on the issue raised by the Teamsters, a court has original jurisdiction merely because it may be certain what the Board will hold. Here is a violent "controversy" in all the producing units of a wide flung industry of the exact kind the National Labor Relations Act is purposed to settle. There is not excluded·from the jurisdiction of the Board controversies which may be decided by holding that the pleadings of one or another of the contestants fails to state facts sufficient to maintain its contention. It has such jurisdiction just as a law court has jurisdiction to decide a controversy over the claimed nonpayment of a promissory note, even though the complaint alleges payment.

■ Since both the Employees and the Brewery Workers Union and also the Breweries have an administrative tribunal established by Congress for the specific purpose of determining the controversy concerning the bargaining agent, the decision of that tribunal, and not the federal court, first should have been sought. Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50, 58 S.Ct. 459, 82 L.Ed. 638. Cf. Fur Workers Union, Local No. 72 v. Fur Workers Union, No. 21238, 70 App.D.C. 122, 105 F.2d 1, 12.

It is argued that certification by the Board would not be a final order, would not be subject to review nor enforceable by the Board nor any one 'aggrieved,' and, hence, would not be a remedy. Therefore, it is urged, there is no administrative remedy which the employee or union claiming representation rights first should seek.

Whether or not certification by the Board be denominated a remedy, it is a determination which we must assume will be observed. However, if the relationship, the existence of which is certified by the Board, be unlawfully interfered with, and if the Board's powers afford inadequate protection to the employees and their union agent, it may well be that under the principles of equity the aid of the courts may be invoked.

The decree declaring the Brewery Workers Union to be the bargaining agent of the brewery deliverymen and ordering the Brewers to deal with that union is reversed and the complaint and cross-complaint, other than the Teamsters', ordered dismissed as to their claims for declaratory relief. The dismissal of the cross-complaint of the Teamsters' is affirmed.

## (B) Injunctive power of the court.

■ The district court held that the demand on the Breweries of the Teamsters' Union for recognition as the bargaining agent of the brewery deliverymen and the boycott and acts of persuasion and coercion to compel such recognition do not involve a labor dispute within the provisions of the Norris-La Guardia Act, 47 Stats. 70, 29 U.S.C.A. § 101 et seq., and hence that it had the usual power to grant injunctive relief to prevent interference with interstate commerce. The court relied on United Electric Coal Companies v. Rice, 7 Cir., 80 F.2d 1. Its decision was rendered without the guidance of Supreme Court holdings to the contrary: Lauf v. Shinner & Co., 303 U.S. 323, 329, 58 S.Ct. 578, 82 L.Ed. 872, decided but 8 days before, and New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 559, 58 S.Ct. 703, 82 L.Ed. 1012, decided a few days after.

■ Nor is there merit in the contention that Congress in the National Labor Relations Act has given either this or the district court a power to enjoin in the case before us greater than that permitted by the Norris-La Guardia Act. The description of

a labor dispute is the same in each act.[2] The courts' power to enjoin without the restriction of the Norris-La Guardia Act when granting "appropriate temporary relief or a restraining order" under Section 10(h) of the National Labor Relations Act, 49 Stats. 455, 29 U.S.C.A. § 160(h), is that of giving "appropriate temporary relief or restraining order" sought by the Board under the preceding paragraph (e) of the same section 10, 49 Stats. 454, 29 U.S.C.A. § 160 (e), which that paragraph states the court "shall have power to grant"[3] and of giving the similar relief "to the Board" in paragraph (f) of Section 10, 49 Stats. 455, 29 U.S.C.A. § 160(f). It is a relief appropriate and incidental to proceedings in the court concerning an order theretofore made by the Board.

Since the acts enjoined were committed in the course of and for the purposes of furthering the Teamsters' aims in a labor dispute as defined in the Norris-La Guardia Act, it was beyond the power of the court to enjoin any of them, so far as they are lawful. Insofar as the acts are found to be unlawful, the Norris-La Guardia Act permits injunctive relief only if it be shown, inter alia, that "the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." Section 7(e), 47 Stats. 71, 29 U.S.C.A. § 107(e).

Neither the pleadings nor findings mention the public officers, much less any inability or unwillingness on their part to furnish such protection.

The decree enjoining the Teamsters' Union is reversed, the injunction ordered dissolved and the cause remanded for such further action as may be or become appropriate. The district court is directed to permit plaintiffs and defendant brewing companies to amend their pleadings, if so advised, (1) to show facts bringing the case within the exceptions specified in section 4 respecting fraud and violence and in section 7 respecting unlawful acts of the Norris-La Guardia Act, 29 U.S.C.A. §§ 104, 107, and (2) to show, more clearly than is

---

2 National Labor Relations Act, Section 2 (9), 49 Stats. 450, 29 U.S.C.A. § 152 (9); Norris-La Guardia Act, Section 13 (c), 47 Stats. 73, 29 U.S.C.A. § 113 (c).

3 "(e) The Board shall have power to petition any circuit court of appeals of the United States (including the Court of Appeals of the District of Columbia), or if all the circuit courts of appeals to which application may be made are in vacation, any district court of the United States (including the Supreme Court of the District of Columbia), within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall certify and file in the court a transcript of the entire record in the proceeding, including the pleadings and testimony upon which such order was entered and the findings and order of the Board. Upon such filing, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony, and proceedings set forth in such transcript a decree enforcing, modifying, and enforc- ing as so modified, or setting aside in whole or in part the order of the Board. * * *

"(f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any circuit court of appeals of the United States in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, * * * the court shall proceed in the same manner as in the case of an application by the Board under subsection (e), and shall have the same exclusive jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; * * *.

"(h) When granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by the Act entitled 'An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes', approved March 23, 1932 (U.S.C.,Supp. VII, title 29, secs. 101–115 [29 U.S.C.A. §§ 101–115])."

now shown, a combination or conspiracy by appellants in restraint of interstate commerce, to present for further consideration the contention of a violation of the antitrust laws, particularly §§ 1 and 3 of the Sherman Act, 15 U.S.C.A. §§ 1, 3.

Each party shall pay his or its own costs and bear no cost liability to any other.