YOERG BREWING CO. et al. v.
BRENNAN et al.

No. 733.

District Court, D. Minnesota,
Third Division.

March 6, 1945.

James E. Kelley, Joseph W. Finley, Joseph A. Maun, and Ronald S. Hazel, all of St. Paul, Minn. (Bundlie, Kelley & Finley, of St. Paul, Minn., of counsel), for plaintiffs.

I. E. Goldberg and David Previant (of Padway & Goldberg), both of Milwaukee, Wis., and Solly Robins (of Robins, Davis & Lyons), of Minneapolis, Minn., for defendants.

Before NORDBYE, JOYCE, and BELL, District Judges.

NORDBYE, District Judge.

There are two primary questions which are raised by this motion; first, whether the Court has jurisdiction over the subject matter of this action and the persons of the defendants, and second, whether the activities of the strikers complained of in the bill, and which are sought to be restrained, grow out of a labor dispute.

Briefly, the factual situation appears to be the following: The plaintiffs are engaged in the production and distribution of beer and malt products in interstate commerce. The defendants are the national and certain local unions of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, all of which unions are affiliated with the American Federation of Labor, and certain officers and agents of said unions. For many years, the International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America was affiliated with the American Federation of Labor and claimed jurisdiction over all persons employed in and by the breweries of America. This union has insisted on the industrial or vertical type of union in breweries, and disputes have arisen between it and the American Federation of Labor because of its refusal to release jurisdiction over the drivers and helpers in the brewery industry. On account of such refusal, the International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America was expelled from the American Federation of Labor in 1941.

The three plaintiff breweries are all located in St. Paul, Minnesota, and have for a number of years jointly negotiated and bargained with various labor unions con-

cerning the employees of each in their respective establishments. In March, 1942, they entered into a contract with local unions Nos. 97, 204, and 314 of the International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America (hereinafter referred to as Brewery Workers' Union) concerning, among other things, hours of work, amount of pay, and conditions of employment, and such contracts specifically included and covered the drivers and helpers of each of the aforementioned breweries. On the 21st day of February, 1944, the defendant Brewery and Beverage Drivers and Helpers' Union Local No. 993, charted by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter referred to as Teamsters' Union), claiming to represent a majority of the drivers and helpers employed by the three breweries, requested recognition as the exclusive bargaining agent of such employees. Such recognition was refused on the grounds that there was an existing contract between the companies and the Brewery Workers' Union. A petition was subsequently filed with the National Labor Relations Board by the Brewery Workers' Union for an election to determine the proper bargaining agent and representative of the plaintiff companies. After a hearing on March 24, 1944, and on July 21, 1944, the National Labor Relations Board made its decision and direction of election in a proceeding entitled "United States of America before the National Labor Relations Board, Case No. 18–R–955." Thereafter, the Teamsters' Union filed its ten-day strike notice in pursuance of the Labor Relations Act of the State of Minnesota. Subsequent thereto, the strike was delayed for thirty days under the state statute by order of the Governor of Minnesota. A motion for reconsideration was filed with the National Labor Relations Board by the Teamsters' Union, but on December 19, 1944, the Board reaffirmed its decision and direction of election. It was on December 13, 1944, that the Teamsters' Union called a strike, and the bill alleges that the strike was called "for the purpose of coercing and compelling plaintiffs to disregard the decision and direction of election of the National Labor Relations Board and for the purpose of coercing and compelling plaintiffs to recognize the Teamsters' Union as the sole bargaining agent and representative of the drivers and helpers employed by plaintiffs." After the strike was called as aforestated, the National Labor Relations Board held its election on January 2, 1945, and on January 10, 1945, issued a certificate of representation to the Brewery Workers' Union as the sole collective bargaining agent and representative of certain employees at the three breweries, including the drivers and helpers. The Teamsters' Union declined to participate in the election when it learned that the Board refused to hold the election on a craft basis.

It appears that the breweries have been closed down since December 13, 1944. This has been occasioned primarily on account of the refusal of other American Federation of Labor workers employed by the breweries to go through picket lines which the Teamsters' Union has placed in front of the plants, office facilities and businesses of the plaintiffs. No violence has occurred, though plaintiffs claim that threats of violence have been made and that violence will result if any attempt is made to carry on the delivery of beer, either by trucks or railroad cars. The bill sets forth very substantial and irreparable loss which will result to the three breweries if the enforced close-down continues. It is pointed out that finished beer is deteriorating and beer in the process of manufacture is approaching spoilage and will be valueless in a matter of a few days. It is plaintiffs' position that there is no labor dispute pending at the three breweries; that the action of the National Labor Relations Board has finally settled any dispute which may have existed between these two unions; and that plaintiffs are neutral in the dispute but have no alternative but to obey the mandate of the National Labor Relations Board. It is contended, therefore, that the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., does not apply and that this Court, sitting in equity, should restrain all of the activities of the strikers in the furtherance of their alleged illegal strike. It is asserted that all of the activities in connection with the strike are solely directed to an unlawful end, in that they are carried on for the purpose of compelling and coercing the plaintiffs to ignore the mandate of the National Labor Relations Board with reference to the Brewery Workers' Union's being certified as the sole bargaining agent of the employees in

question. No attempt has been made by plaintiffs to comply with the conditions of the Norris-LaGuardia Act. A restraining order was issued out of this Court on February 12, 1945. Obviously, if the Norris-LaGuardia Act applies, the restraining order was improvidently granted.

Diversity of citizenship between the parties does not exist. The jurisdiction of this Court is sought to be invoked under 28 U.S.C.A. § 41, which provides in part: "The district courts shall have original jurisdiction as follows: * * * Eighth. Of all suits and proceedings arising under any law regulating commerce."

Plaintiffs point out that the obligation resting upon them to comply with the order of the National Labor Relations Board is an affirmative one, and that it exacts "the negative duty to treat with no other." National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 44, 57 S.Ct. 615, 628, 81 L.Ed. 893, 108 A.L.R. 1352. They assert that this proceeding "is one brought to protect the rights of the plaintiffs to comply with their obligations arising out of the statute enacted by Congress to regulate commerce from efforts by the defendants to prevent the performance of such obligations." In support of their contention of jurisdiction, the Court is referred to Medo Photo Supply Corporation v. National Labor Relations Board, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007; Young & Jones v. Hiawatha Gin & Mfg. Co., D.C., 17 F.2d 193; Toledo, P. & W. R. R. v. Brotherhood of R. R. Trainmen, 7 Cir., 132 F.2d 265; Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. In view, however, of the conclusions which we have reached as to the existence of a labor dispute, we do not find it necessary to rule on the question of jurisdiction of the subject matter and the persons of the defendants. We therefore proceed to consider whether the activities complained of in the bill grow out of a labor dispute. If they do, then manifestly the restraining order should be dissolved and the bill dismissed, because it affirmatively appears that plaintiffs have made no attempt to comply with the Norris-LaGuardia Act as a condition precedent to the obtaining of injunctive relief. In Section 13 of the Norris-LaGuardia Act, 29 U.S.C.A. 113(c), the term "labor dispute" is defined as follows: "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

And as stated in Burlington Mills Corporation v. Textile Workers Union, D. C., 44 F.Supp. 699, 704: "* * * The National Labor Relations Act did not repeal the Norris-LaGuardia Act nor did it supersede it. They can be and are interpreted together; and if controversies arising by virtue of the procedure set forth by the National Labor Act are labor disputes within the definition of the Norris-LaGuardia Act, then the provisions of the latter are equally applicable to them."

It seems evident from the bill that a labor dispute did have its inception on February 21, 1944, when the Teamsters' Union claimed to represent the majority of the drivers and helpers employed at the three breweries and requested the recognition of said union as the exclusive bargaining agent to represent the drivers and helpers employed by said companies. The three breweries refused recognition on the ground that they were covered and bound by an existing contract between said companies and the Brewery Workers' Union. After the National Labor Relations Board intervened in the dispute and made its decision and direction of election, the Teamsters' Union, in a protest against the decision and direction of election, filed its notice of strike. The Teamsters' Union did call the strike, and it has remained out on strike since December 13, 1944.

We commence, therefore, with the premise or proposition that a labor dispute had its inception in February, 1944, and that, growing out of such dispute, a strike of the Teamsters' Union was called apparently a month before the certificate of representation was issued by the National Labor Relations Board. It fairly appears that the activities of the Teamsters' Union in connection with its strike are substantially the same at the present time as existed prior to the issuance of the certificate by the Board. The query then arises: Did the labor dispute end with the Board's certificate of representation which it issued on January 10, 1945?

At the outset, it should be noted that there is an utter absence of any provisions in the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., which require a union to cease a labor dispute because of the certificate of the Board designating another union as the sole bargaining agent and representative of the employees. True, the minority union has no standing as the collective bargaining agent of the employees covered by the election, but the Board's mandate does not prevent the minority union from striking or otherwise seeking to manifest its dissatisfaction or opposition to the results. Its right to strike is preserved by Section 163, Title 29, U.S.C.A., which provides: "Nothing in sections 151–166 of this title shall be construed so as to interfere with or impede or diminish in any way the right to strike." Certainly, it is clear that no court has authority to order the striking teamsters back to work. In absence of some prohibition in the National Labor Relations Act, it seems logically to follow that this strike may continue in so far as it may pursue lawful means to publicize its grievances. That there are legitimate channels in which the striking union may direct its activities seems quite apparent. It must be remembered that this jurisdictional dispute is not a local affair. It has existed in the brewery industry throughout the Nation for some fifty years. See Green v. Obergfell, 73 App.D.C. 298, 121 F.2d 46, 138 A.L.R. 258. The strikers, it would ·seem, have the unquestioned right to inform their fellow members of the American Federation of Labor, as well as the public, that they are on strike in protest against representation by the Brewery Workers' Union. The strikers presumably may labor through the medium of a strike in the hope that such activities may cause the Board to change its views regarding the propriety of having a craft election rather than representation by a so-called industrial union. Through the medium of the strike, the strikers may entertain the hope that some members of the Brewery Workers' Union may perchance desert that union and come into the ranks of the American Federation of Labor. These and other objectives and aims were not foreclosed by the Board's determination. If we grant that the Teamsters' Union has a right to strike and that in carrying out such a strike it may lawfully publicize its grievances, can there be any serious question that there now exists a labor dispute and that at least some of the activities of the strikers which are sought to be curtailed are inextricably part of such strike.

But plaintiffs contend that the strike has for its primary purpose the coercing and compelling of the breweries to disobey the National Labor Relations Board certification and thus become guilty of an unfair labor practice, and that, while the union's right to strike is inviolate, the strike cannot be carried on for an unlawful purpose. It may well be that any activities of the strikers which have for their objective such unlawful purposes are amenable to the jurisdiction of an equity court. The difficulty, however, in granting relief on the present bill of complaint is to be found in the limitations which are saddled on the equity jurisdiction of Federal courts by the ·Norris-LaGuardia Act; that is, we cannot divorce from the strike which is now in existence the objections which the members of the Teamsters' Union continue to make to the representation of their craft by the. Brewery Workers' Union. Certainly, there continues to be some kind of a dispute between these two unions. The members of the Teamsters' Union have deserted the breweries and refuse to work. One cannot close his eyes to that fact. The dispute had its genesis in the objection that the Teamsters' Union had to any representation by the Brewery Workers' Union. Such dispute continues. It follows that the present dispute must be characterized as a labor dispute if one will realistically consider the entire picture. If the action of the National Labor Relations Board were fortified by appropriate legislation so that its ruling became a decision which forbade the defeated union to protest against it by way of strike, it may well be that, under such circumstances, one could say that the labor dispute had ended and the mere fact that a strike had been called violated the mandatory legislation which applied. However, as hereinbefore observed, there are no provisions in the National Labor Relations Act which impose any duty upon the defeated union except that, if its members remain at work, they must recognize the certified union as the proper bargaining agent of all the employees.

If it should be claimed that all of the activities of the strikers are directed to an unlawful end, that is, the coercion of the breweries into the performance of an

unfair labor act, and that therefore a restraining order might issue because any strike which has for its purpose an unlawful end may be properly enjoined, we are nevertheless confronted with the fact that even such illegal activities cannot be enjoined unless and until the plaintiffs comply with the conditions precedent of the Norris-LaGuardia Act. In other words, once it is made to appear that a labor dispute exists, whether the activities of the strikers are justified or not, and whatever their motives may be, this Court is helpless to grant any injunctive relief without a strict compliance with the Norris-LaGuardia Act.

Reliance is placed on Oberman & Co. v. United Garment Workers, D.C.Mo., 21 F. Supp. 20, decided by Judge Reeves in 1937. The facts are very similar to the instant case. A reading of the Oberman case indicates that the court's holding to the effect that the Norris-LaGuardia Act did not apply to the facts and circumstances therein was based, in part, at least, on its construction of the National Labor Relations Act. It will be observed that Judge Reeves placed considerable emphasis on the language of the National Labor Relations Act, 29 U.S.C.A. § 160(h): "When granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by sections 101–115 of this title."

And on page 26 of the decision in 21 F.Supp., the court states with reference to the section above quoted: "It will be observed from this that the Congress made the Norris-LaGuardia Act inapplicable to situations such as are here presented. * * * The District Court, therefore, was regarded as having jurisdiction in controversies like the one here presented."

■ Apparently, it was the court's view that, when the National Labor Relations Board had determined the union which should represent the employees for bargaining purposes, and in view of the fact that the statute did not clothe the Board with power to enforce such order as against the employees, the courts, therefore, must necessarily be clothed with such power. But we doubt the soundness of these deductions. The quoted language from Section 160(h), 29 U.S.C.A., has reference only to the equity jurisdiction which is vested in the Circuit Courts of Appeals in enforcing the Board's orders, and where it becomes necessary for the Circuit Courts of Appeals to enforce such orders by injunction or otherwise, the provisions of the Norris-LaGuardia Act do not apply. And there is no basis for the assumption that Congress intended to abrogate the Norris-LaGuardia Act when and if the District Court under the circumstances herein should assume to exercise its equity jurisdiction. This is made plain by the language of Judge Sanborn in Donnelly Garment Co. v. International Ladies' Garment Workers' Union, 8 Cir., 99 F.2d 309, 315, wherein he states: "It also seems clear to us that the only jurisdiction conferred by the National Labor Relations Act upon federal courts is that conferred upon the Circuit Courts of Appeals with respect to enforcing, modifying and setting aside orders of the National Labor Relations Board, * * *."

The court then makes reference to the portion of Section 160(h), 29 U.S.C.A., which was referred to in the Oberman case, and anent this section Judge Sanborn said, 99 F.2d at page 315: "* * * The necessary inference is that in all other respects the effect of the Norris-LaGuardia Act upon the jurisdiction of 'courts sitting in equity' was left unimpaired."

It is significant that Judge Sanborn then referred, among other cases, to the dissenting opinion of Judge Otis in Donnelly Garment Co. v. International Ladies' Garment Workers' Union, D.C., 21 F.Supp. 807, 830, wherein Judge Otis stated: "No one who reads the Norris-LaGuardia Act, especially if he reads it in the light of its history and background, can have any doubt whatever but that Congress intended that no injunction should issue except as conditioned in the act in a dispute between a national labor union and an individual employer of labor concerning inter alia the unionization of employees under the national union. Concede now that the National Labor Relations Act provides a forum (the National Labor Relations Board) for the decision of just such a labor dispute as that, but that the union does not elect to submit that dispute to the forum provided and proceeds to lay siege vi et armis to the employer's factory. What is there in the act, in the act which expressly provides (notwithstanding it provides a forum for the adjustment of labor disputes) that it shall not 'be construed so

as to interfere with or impede or diminish in any way the right to strike,' section 13, 29 U.S.C.A. § 163, that suggests an intention to diminish in some way a right only recently gained by labor, i.e., a right to freedom from injunctions except when obtained in accordance with stated conditions? The whole course of Congress in the last decade is against such a conclusion."

Moreover, the Oberman case was decided before Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872, and New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012. It is significant that the Court of Appeals for the District of Columbia in Fur Workers Union, Local 72 v. Fur Workers Union, 70 App.D.C. 122, 105 F.2d 1, 13, refused to follow the reasoning in the Oberman case, and pointed out that this case "is much weakened by the fact that it was decided prior to Lauf v. E. G. Shinner & Co. [supra] in the Supreme Court."

Plaintiffs also rely on Union Premier Food Stores v. Retail Food C. & M. Union, 3 Cir., 98 F.2d 821, where the majority opinion holds that a labor dispute does not exist under the Norris-LaGuardia Act where two unions are in dispute as to which one should be the bargaining agent for the employees and as to which dispute the National Labor Relations Board had assumed jurisdiction but no election or certification had been made. However, it would seem that the reasoning in that case is not persuasive, particularly when it appears that it was due to the very labor dispute which existed between the two unions regarding the right to represent the employees which occasioned the intervention of the National Labor Relations Board.

We are also referred to certain state cases from which plaintiffs seem to find support for their position herein. R. H. White Co. v. Murphy, 1942, 310 Mass. 510, 38 N.E.2d 685; Florsheim Shoe Store Co. v. Retail Shoe Salesmen's Union, 288 N.Y. 188, 42 N.E.2d 480; Euclid Candy Co. of New York v. Summa, 174 Misc. 19, 19 N.Y. S.2d 382, affirmed, 259 App.Div. 1081, 21 N.Y.S.2d 614; Markham and Callow v. International Woodworkers, 1943, 170 Or. 517, 135 P.2d 727. These state decisions might be helpful in the event this proceeding were pending in the State Court. But in view of the construction given by the Federal courts to the National Labor Relations Act and the Norris-LaGuardia Act, we do not believe that the state decisions referred to constitute persuasive precedents.

Reference may be made to the case of Wilson Employees' Representation Plan v. Wilson & Co., D.C., 53 F.Supp. 23. There, two rival labor organizations were in dispute. The National Labor Relations Board caused certain elections to be held and decided that one of the unions was entitled to represent the employees. During the pendency of the Board's proceedings, however, the employer had entered into a contract with the other union. The latter brought an action against the employer seeking to enjoin the repudiation of the contract which had been entered into prior to the certification by the Board. The union certified by the Board as the representative of the employees intervened. In setting aside the injunction which·had been granted and dismissing the bill, the court made the following finding, 53 F. Supp. at page 40: "That the action at bar arises out of a controversy which concerns the association or representation of certain of the defendant's employees in negotiating, fixing, or seeking to arrange terms or conditions of employment; in other words, that the essence of the controversy is the right of plaintiff labor organization, on the one hand, and that of the intervenor, on the other, to organize certain employees of defendant, and hence that such controversy constitutes a labor dispute within the meaning of the provisions of both the National Labor Relations Act and the Norris-LaGuardia Act."

In Houston & North Texas Motor Freight Lines v. Local Union No. 886, etc., D.C.Okl., 24 F.Supp. 619, the employer had complied with the National Labor Relations Act with reference to bargaining with the representatives of more than fifty-one per cent of his employees. However, a strike was called by a union which sought to compel the employer to accept it as the bargaining agency. In commenting upon the application for a restraining order against the strikers, the court stated, 24 F.Supp. at page 639: "Let us suppose that the Court granted an injunction to the complainant in this case, restraining the respondent Union from picketing his place of business or in any way interfering with the operation of his business by peaceful picketing or persuasion because he had bargained with a committee of his em-

ployees; had entered into a contract with them concerning wages, hours, and conditions of employment and that the contract was satisfactory to all parties and that under the provisions of the National Labor Relations Act the employees were granted their right of self-organization by representatives of their own choosing and this court did enforce that right, sitting as a court of equity. Can it be said that it would not have the direct effect of interfering with or impeding or diminishing the right to strike. This conclusion seems to me to be unescapable."

In International Brotherhood, etc., v. International Union, etc., 9 Cir., 106 F.2d 871, it appears that the same unions which are involved in the instant situation were engaged in a jurisdictional strike in the states of California, Oregon and Washington. At that time, the Brewery Workers' Union and the Teamsters' Union belonged to the same International. After the passage of the National Labor Relations Act, the employees employed in the brewing, bottling, and delivery departments of certain breweries in California, Oregon and Washington selected in writing the Brewery Workers' Union as their sole and exclusive representative for collective bargaining. The International directed the teamsters belonging to the Brewery Workers' Union to affiliate with the Teamsters' Union. The Brewery Workers' Union refused to comply and repudiated this order. The Teamsters' Union then called a strike and instituted and carried on a boycott in the states mentioned, and the Brewery Workers' Union and others instituted an action for injunction against interference with the employer and employee relationship and for other relief. The lower court granted an injunction, and on appeal this decree was reversed. Referring to the contention that the National Labor Relations Act limited the applicability of the Norris-LaGuardia Act, the Circuit Court of Appeals stated, 106 F.2d at page 876: "Nor is there merit in the contention that Congress in the National Labor Relations Act has given either this or the district court a power to enjoin in the case before us greater than that permitted by the Norris-LaGuardia Act. The description of a labor dispute is the same in each act."

The court further stated, 106 F.2d at page 877: "Since the acts enjoined were committed in the course of and for the purpose of furthering the Teamsters' aims in a labor dispute as defined in the Norris-LaGuardia Act, it was beyond the power of the court to enjoin any of them, so far as they are lawful. In so far as the acts are found to be unlawful, the Norris-LaGuardia Act permits injunctive relief only if it be shown, inter alia, that 'the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.'"

The following Federal cases are helpful: Blankenship v. Kurfman, 7 Cir., 96 F.2d 450; Grace Co. v. Williams, 8 Cir., 96 F.2d 478; United Electrical Radio & Machine Workers v. International Brotherhood of Electrical Workers, 2 Cir., 115 F.2d 488; Cupples Co. v. American Federation of Labor, D.C., 20 F.Supp. 894.

We cannot emphasize too strongly the very evident intention of Congress when it provided in the National Labor Relations Act that nothing contained therein should impede or diminish labor's right to strike. This, coupled with the failure of Congress to provide any legislation whereby orders of the National Labor Relations Board become binding upon the employees, impels us to the conclusion that a labor dispute exists herein notwithstanding that the representative of the employees for collective bargaining purposes has been determined by the Board. As stated in Lund v. Woodenware Workers Union, D.C., 19 F.Supp. 607, 609: "A reading of the Wagner Act impels the view that it was passed primarily to eliminate unfair labor practices on the part of the employer, to guarantee to the employees the right of self-organization, and to secure the right to bargain collectively through representatives of their own choosing. There is no express provision in the act which seeks to affect, limit, or curb unfair practices on the part of labor towards the employer."

The right of labor to publicize its grievances if it does so in a peaceful manner, regardless of the apparent injustice to third parties, has been upheld by the Supreme Court in such sweeping language that no doubt can now exist as to this right. Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Cafeteria Employees Union v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58. It seems uncontradictable that the injunction

which plaintiffs seek, if granted, would unquestionably have the effect of hindering or obstructing the right to strike, and would run counter to this right which has been specifically preserved by Congress. Although plaintiffs' predicament has strong, appealing equities, we find ourselves without authority to grant relief.

Summarizing our views, therefore, we are constrained to hold that the only jurisdiction conferred by the National Labor Relations Act upon the Federal courts is that which is conferred upon the Circuit Courts of Appeals; that the applicability of the Norris-LaGuardia Act to a labor dispute is unimpaired by the National Labor Relations Act in so far as the jurisdiction of the District Courts is concerned; that the action of the National Labor Relations Board in endeavoring to settle a dispute as to the bargaining representatives and agents of the employees by its certification after election does not prevent an aggrieved union from striking and using all peaceful methods in proclaiming its dissatisfaction and in endeavoring to enlist public opinion in support of its cause; and that a strike under such circumstances by the aggrieved union must be characterized as one which stems out of a labor dispute and therefore any activities growing out of such strike cannot be restrained by this Court without a strict compliance with the Norris-LaGuardia Act.

It may be urged that the situation presented strongly emphasizes the extreme one-sidedness of the National Labor Relations Act legislation; that is, the employer is bound to comply with the orders of the Board, but the employees are free to flout the Board's decision and create the anomalous and often calamitous situation of an employer's being caught, without fault on his part, between the upper and nether millstones. We are not unmindful of the apparent harsh consequences of our ruling, but such a result must not be permitted to affect our judgment in applying the law in the field of interpretation. We do not have the power to legislate. In labor disputes, we have only such equity jurisdiction as Congress has seen fit to grant.

It follows, therefore, that the motion to vacate the restraining order and to dismiss the bill of complaint should be granted. It is so ordered. An exception is allowed to the plaintiffs.